Edward J. COLLINS

v.

STATE BOARD OF ELECTIONS et al.

Joseph A. DOORLEY, Jr.

v.

STATE BOARD OF ELECTIONS et al.

Nos. 84–259–M.P., 84–261–M.P.

Supreme Court of Rhode Island.

Aug. 16, 1984.

Bruce E. Vealey, Cranston, Thomas B. Coffey, Jr. (Coia & Lepore), Providence, for plaintiffs.

Dennis J. Roberts II, Atty. Gen., Thomas H. Caruolo, Spec. Asst. Atty. Gen., Anthony Bucci, Providence, for defendant.

## OPINION

KELLEHER, Justice.

On May 22, 1984, we entered an order in each of the above-entitled certiorari proceedings quashing a decision of the State Board of Elections (board of elections) that in turn sustained the rejection by the Providence Board of Canvassers (canvassers) of declarations of candidacy filed with the canvassers by Edward J. Collins (Collins) and Joseph A. Doorley, Jr. (Doorley). Both Collins and Doorley were seeking to be candidates in a June 12, 1984 primary election that would designate the Democratic Party's nominee for the office of Mayor of the City of Providence at a special election that was then scheduled to be held on July 17, 1984. The special election was for the purpose of filling the unexpired term of Vincent A. Cianci, Jr., who, after pleading nolo contendere to charges of having committed an assault with a dangerous weapon, received a five-year suspended sentence. After the sentencing, he resigned from office.

The facts are undisputed. On May 1, 1984, the canvassers' records indicated that Collins and Doorley were both registered voters in Providence, the former residing at 43 College Road, and the latter residing at 20 Radcliffe Avenue. The canvassers had established the period during which declarations of candidacy for the office of mayor would be accepted for filing as beginning on May 17, 1984, and expiring at 5 p.m. on May 22, 1984.

On May 1, 1984, Collins notified the canvassers of a change in residence; he had moved from 43 College Road to 754 Valley Street. Doorley on May 11, 1984, notified the canvassers of a change of residence; he had sold the Radcliffe Avenue property and had moved to 230 South Main Street. In making these changes, Collins and Doorley, although they both remained in the city of Providence, moved into new voting districts. Both Collins and Doorley filed their declarations of candidacy on May 17, and on the same day the canvassers met and rejected their respective declarations.

The canvassers as well as the board of elections, in rejecting the declarations of Collins and Doorley, placed great emphasis on two provisions of the state's election laws. One is G.L. 1956 (1981 Reenactment) § 17-14-2, which in its pertinent portions stipulates that no person shall be eligible to be a candidate or to be voted for in a primary unless at the time of filing the declaration the candidate is "qualified to vote in a primary within the district for the

office which he seeks." The other statute is G.L. 1956 (1982 Reenactment) § 17–9–16(a)(2), as amended by P.L. 1983, ch. 172, § 4, which states that a voter who has moved within the same municipality from one voting district to another can vote in the new voting district if the voter, at least thirty days prior to the election or primary, notifies the canvassers of the transfer of his or her voting registration to the new district.

The board of elections in its decision also referred to *Conrad v. Town of Narragansett Board of Canvassers*, R.I., 420 A.2d 50, 51–52 (1980), in which this court, in construing § 17–14–2, described as "clear and sensible" the statute's mandate that a candidate's eligibility to seek public office was to be determined as of the date of the filing of the declaration of candidacy. The term "district" was also construed to mean a municipality. Conrad was one of five Narragansett residents who, at the time of their filing as candidates for election as the Democratic Party's representatives on the town committee, had been registered to vote in the town less than ten days prior to the filing of their declarations. In 1980 § 17–1–3 listed the conditions that had to be satisfied before an individual could be eligible to vote in an election: He or she must be at least eighteen years old, have United States citizenship, and be registered for at least thirty days prior to the election in the municipality in which the ballot will be cast. Since Conrad and his associates at the time of filing could not satisfy the thirty-day registration requirement found in § 17–1–3, the canvassers rejected their declarations; this action was affirmed by the board of elections, and this court sustained the rejection.

Time has marched on, and the General Assembly at its January 1983 session enacted P.L. 1983, ch. 172, which was entitled the "The Voting Reform Act of 1983" and amended several of the provisions of the state's election laws. The act, which became effective July 1, 1983, was designed to limit the number of voters who could qualify for mail ballots and to provide a system whereby the authenticity of a voter's claim of residency could be challenged. Before considering the changes made to §§ 17–1–3 and 17–9–16(a)(2), we would add that at no time have the canvassers or the board of elections ever challenged the good faith of either Collins or Doorley when in May of 1984 they notified the canvassers of their respective changes of residence. In May of 1984 Collins had been a registered voter in the city of Providence for close to thirty years, and Doorley had been a registered voter in the capital city for over three years.

The 1983 version of § 17–1–3 affords the right of voting to "[e]very citizen of the United States who is at least eighteen (18) years of age" who has resided in this state for at least thirty days and in the municipality and voting district in which he desires to cast his vote for at least thirty days directly preceding the election and who shall be registered in that municipality and voting district at least thirty days directly preceding the election.

Section 17–9–16 in its pertinent parts was unchanged by the 1983 revision of the election laws. It deals with the registered voter who moves. Sections 17–9–16(a)(1) and (2) concern the voter who moves and takes up residence within the same municipality. Section 17–9–16(a)(1) provides that the registered voter who moves to a new residence within the same voting district may vote at a forthcoming election or primary from a new district provided that the voter, at least thirty days prior to the election, has submitted to the canvassers a written request for a change of address. A voter who has moved within the municipality in which the voter is registered but into a different voting district may vote in a forthcoming election or primary if, thirty days prior to the election or primary, the voter has requested from the canvassers a "transfer of registration" to the new voting district. Section 17–9–16(a)(2). Section 17–9–16(b) deals with the voter who has changed his voting residence by moving

into a different municipality. Such an individual is required to register in the city or town into which he has moved; if such a move has taken place less than thirty days prior to a forthcoming election, the voter may vote by a special paper ballot for federal and statewide elected officials.

In sustaining the canvassers' rejection of the declarations of candidacy, the board of elections found that neither Collins nor Doorley, at the time they filed their declarations, had resided within their new voting districts for at least thirty days, a requirement which the board thought was mandated by the provisions of §§ 17–1–3, 17–9–16(b) and 17–14–2. The canvassers' rationale for their action was essentially the same. In our opinion, the board of elections and the canvassers were in error.

The voting qualifications that are set forth in § 17–1–3 are to be met by those individuals who are voting for the first time or by a registered voter who has moved from one municipality to another and who, because of the provisions of § 17–9–16(b), has registered with the canvassers of the municipality in which the voter has taken up a new residence. Collins and Doorley cannot be considered as new voters or as voters who have moved from Providence to some other municipality.

The registration scheme provided by the General Assembly to the voter who restricts any change of residence to a move within the confines of the municipality in which the voter is registered has been described as "permanent." There is no need for any such individual to renew the registration. Section 17–9–19, as amended by P.L. 1983, ch. 172, § 4, specifically provides that nothing in chapter 9 of title 17 "shall be construed to require any voter to re-register if he is already registered in the city or town in which he has his residence as defined in § 17–1–3.1 * * *."

With the rationale of § 17–9–19 firmly before us, we now turn to the precise pertinent provisions of § 17–9–16(a)(2), which reads as follows:

"17–9–16. Procedure on change of address.—(a) A voter who has moved his residence, as defined in § 17–1–3.1 from the address at which he is registered to another within the same city or town may vote in the voting district of his new residence upon the following conditions:

\*　　\*　　\*　　\*　　\*　　\*

(2) If the new address is in the same city or town, but in a different voting district, and he shall have requested a transfer of registration to the new voting district, in such form as shall be prescribed by the state board, thirty (30) days prior to an election or primary * * *."

Section 17–9–16(a)(1) and the provisions of § 17–9–16(a)(2) are identical, except that the voter who changes residence within the voting district files with the canvassers a "written request for a change" of address rather than a request for a transfer of registration. There is nothing, however, in § 17–9–16(a)(2) that requires a thirty-day residence in a new voting district before a person is eligible to file a declaration of candidacy. All that is required is that the request be made thirty days before the election.[1]

Here, the primary was scheduled for and held on June 12, 1984. Collins had filed his request on May 1, and Doorley followed suit on May 11. Both requests were timely, and thus when they filed their declarations on May 17, 1984, they could do no more. At the hearing before the elections board, the canvassers' chairman testified that the board, acting pursuant to the pro-

---

**1.** The General Assembly at its January 1984 session enacted legislation which provides for a statewide verification of voting lists maintained at both the Secretary of State's Department of Central Voter Registry and at the Boards of Canvassers of the state's thirty-nine municipalities. While the legislation was being considered by the Senate Judiciary Committee, G.L. 1956 (1981 Reenactment) § 17–9–16 was amended by adding subsection (d), which permits a voter who moves within the same municipality during the twenty-nine-day period immediately preceding an election or primary to vote in the former voting district. See P.L. 1984, ch. 335, § 4.

visions of § 17–1–3.3 (1983 Cum.Supp.), had verified the change of the candidates' voting districts.

Finally, we come to the board of elections and canvassers' reliance on § 17–14–2's requirement that a candidate, at the time of filing a declaration of candidacy, be qualified to vote in a primary within the district for the office that he or she seeks. The board of elections and the canvassers equated the term "district" found in § 17–14–2 with "voting district."

The election laws of this state at one point or another refer to all sorts of "districts." There are "voting" districts, and the geographical outline of an ideal voting district would, on the basis of § 17–11–1, be designed in such a way that "substantially not more than sixteen hundred (1600) voters shall be served by the same polling place." Other provisions of chapter 11 of title 17 reveal that a municipal ward or any one of the state's one hundred "representative districts" or its fifty "senatorial districts" can consist of several voting districts; and of course, chapter 4 of title 17 deals with the federal elective offices, and we find the geographical boundaries of Rhode Island's first and second congressional districts.

The present language of § 17–14–2 is a direct result of this court's holding in *Giannini v. Board of Elections*, 101 R.I. 285, 222 A.2d 193 (1966), in which the board of elections and Providence's canvassers had rejected Giannini's declaration of candidacy for the Democratic Party's nomination for the office of state senator from Providence's fifth senatorial district. The rejection was based on a finding at the administrative level that the candidate was not qualified to vote in the fifth senatorial district on the day of filing his declaration. In his appeal Giannini pointed out that there was no language in the 1966 version of § 17–14–2 that required a candidate to be a qualified voter in the fifth senatorial district at the time of the filing of his declaration. All the 1966 statute required was that a candidate, at the time of the filing of

the declaration, "be a qualified voter eligible to vote at the primary of said political party." No one disputed the fact that Giannini was certainly eligible to vote somewhere in the 1976 Democratic primary. In granting relief, the court observed that "the statute is not susceptible of any reasonable construction that would in the circumstances sustain the validity of the board's action." Consequently, the court ordered that Giannini's declaration of candidacy be accepted. *Id.* at 286, 222 A.2d at 193.

Two years later the General Assembly, with the enactment of P.L. 1968, ch. 247, plugged the gap present in the 1966 legislation and included within the statute a provision that a candidate, at the time of the filing of a declaration of candidacy, must be qualified to vote in a primary within the district for the office that he seeks. The "district" contemplated by the Legislature in 1968 was certainly not a voting district. Rather, the Legislature in 1968 made it clear that a person who files a declaration of candidacy must at that time be qualified to vote in a primary election within the district whose constituents the candidate seeks to represent.

■ The term "district" as commonly used in election laws, in our opinion, means any one of the divisions or subdivisions in which the state or its municipalities are divided for political purposes. Thus, a party seeking to be a candidate for a position such as member of a municipal council, state representative, or state senator must, at the time of the filing of the declaration, be qualified to go to a polling place situated in one of those aforesaid divisions—be it a municipal ward or a state representative or senatorial district—and there cast a ballot.

■ Here, the "district" in which Collins and Doorley were candidates was the entire city of Providence. There is no question that on the day they filed their applications, they were long-time registered voters in the city and qualified to vote in the

primary, notwithstanding their move from one of the city's voting districts to another. Consequently, for the reasons stated above, this court on May 22, 1984, entered the order alluded to in the first paragraph.

BEVILACQUA, C.J., did not participate.